OPINION OF THE COURT
Edward O. Provenzano, J.
Petitioner has proceeded pursuant to CPLR article 78 to annul respondents’ determination, dated August 25, 1976 which, following a public hearing, denied petitioner’s applica *782 tion for a zoning variance. In addition to the record of proceedings before the respondent board, the court has been aided by a transcript of a deposition of the petitioner and by testimony taken before the court (see 2 Anderson, New York Zoning Law and Practice [2d ed], § 22.17).
The New York State Thruway runs east-west through the lower half of the Town of Henrietta, in Monroe County. Bordering on the southern edge of the Thruway are two adjoining parcels of land, each approximately 20 acres in size. The westerly parcel, presently owned by Banker’s Trust Company of western New York, is bordered on the west by East Henrietta Road. The easterly parcel, presently owned by the petitioner, Fred C. Blum, is bordered on the east by Pinnacle Road. Public school land lies to the south of the Banker’s Trust parcel. Farm land lies to the south of the Blum parcel. Both parcels are in a "Residential A” zone, as is all surrounding land for at least a half mile in every direction.
Several years ago both parcels were owned by Robert Hill, a professional golfer, and Outdoor Recreation, Inc. (hereinafter called O.R.I.), a corporation formed by Hill. Through a series of special permits and variances, issued between 1969 and 1972, Hill and O.R.I. were authorized "to operate a recreational facility embracing both parcels as one recreational complex”. It appears that the later permits and variances were accessory to the initial permit, granted to Hill on June 13, 1969, to operate a golf course and country club on the Banker’s Trust parcel. (Section 39-6(a)(8) of the Zoning Ordinance of the Town of Henrietta provides that golf courses, "including those operated for profit”, shall be permitted uses in "Residential A” districts, "upon obtaining a special permit therefor from the Zoning Board of Appeals”.) The uses thus authorized resulted in: (1) on the Banker’s Trust parcel, construction and installation of a nine-hole golf course, a swimming pool and accessory buildings; and (2) on the Blum parcel, construction and installation of five outdoor tennis courts, a small tennis clubhouse building and a metal building, 210 feet by 110 feet by 34 feet high, housing four tennis courts (for winter indoor play), locker rooms, an office and a rental shop. So far as the present Blum parcel is concerned, a variance granted to O.R.I. on November 28, 1969 was "for construction of tennis courts, paddleball courts, one service building, badminton courts, sauna bath facilities, and horseshoe, picnic, and play areas” (emphasis added).
*783 Petitioner became a stockholder in O.R.I. in 1972. O.R.I. thereafter became insolvent and its commercial operation of the two parcels ceased. Following a mortgage foreclosure and sale, petitioner purchased the easterly (Blum) parcel in 1974. In the summer of 1974 he commenced the installation of a softball diamond and erected an outfield fence on the Blum parcel. In August, 1974 respondents’ attorney informed petitioner by letter that neither a baseball operation nor a softball operation was a permitted use of the subject parcel, and requested immediate cessation of any such "unlawful use” of the premises. Petitioner thereafter applied to the zoning board for a variance to legitimize the use of the premises for softball playing, soccer games and the like. In his application for that variance petitioner wrote "It is my opinion that since there is a variance from the residential to use this area as a play area, that certainly playing softball comes under the title of play area”. The zoning board of appeals denied that application of petitioner on June 26, 1975. Petitioner never sought judicial review of that denial.
The present litigation derives from respondents’ denial to petitioner of a variance to permit construction and operation of a roller skating rink on the Blum parcel and location and construction of an access road between Pinnacle Road and the skating area. Among respondents’ reasons for denial were their findings that: (1) petitioner submitted no proof that the subject parcel could not yield a reasonable return on his investment if used for the purposes permitted by the special permits and/or variances previously granted; (2) the parcel lies within "the heartland” of a residential area which contains abundant undeveloped land for future development for residential purposes; (3) on July 17, 1974 (prior to the date of recording of petitioner’s deed of title to the subject parcel) the Town Board of Henrietta adopted a comprehensive plan whereby it is deemed to be in the public interest to develop for residential and agricultural purposes that quadrant of the town wherein the subject parcel lies; (4) a roller skating operation would have the effect of introducing into the area a high level of commercial activity, with attendant concentrations of patrons and traffic, entirely out of keeping with the residential character of the area.
The Court of Appeals recently restated the standards for judicial review of zoning board decisions, in Matter of Cowan v Kern (41 NY2d 591, 599): "Absent arbitrariness, it is for *784 locally selected and locally responsible officials to determine where the public interest in zoning lies * * * Judicial review of local zoning decisions is limited; not only in our court but in all courts. Where there is a rational basis for the local decision, that decision should be sustained. It matters not whether, in close cases, a court would have, or should have, decided the matter differently. The judicial responsibility is to review zoning decisions but not, absent proof of arbitrary and unreasonable action, to make them.”
In support of his claim of respondents’ arbitrariness and capriciousness, petitioner argues that: (1) respondents chose the term "play areas” (in connection with the variance of November 28, 1969); (2) that term has been nowhere defined by respondents or by ordinance or otherwise; (3) the term must therefore be construed strictly against respondents and broadly in favor of petitioner; and (4) petitioner therefore purchased a vested right to use the subject parcel for any activity which comes within a dictionary definition of the word "play”.
There is authority for the proposition that a granted variance "runs with the land”. (See 2 Anderson, New York Zoning Law and Practice [2d ed], § 18.51; but, cf. McGowan v Cohalan, 41 NY2d 434.) There is also ample authority that strict language construction must be applied to zoning regulations and ordinances which restrict the use of land, since they are in derogation of the common law. (See 1 Anderson, New York Zoning Law and Practice [2d ed], § 12.01.) The court does not believe, however, that the rule of strict construction properly applies to the granting of variances which enlarge, rather than restrict, the use of land. The rule in such cases is that the language must be construed in light of the zoning ordinance as a whole and with a view to its purposes. (See 101 CJS, Zoning, § 279.) The court cannot agree with petitioner’s broad construction of the term "play areas”. Viewed in proper context, the court interprets the applicable portion of the November, 1969 grant, as if it read: "and horseshoe, picnic, and similar play areas”. Logical extensions of petitioner’s contrary construction would authorize use of his parcel for professional hockey or jai alai operations. No such broad construction may reasonably be placed on the language of the aforesaid granted variance.
The court holds that there was ample evidence in the proceedings before the respondent zoning board to warrant *785 their aforesaid findings and determination. In particular, petitioner failed to demonstrate to respondents, by "dollar and cents” proof, that the land in question cannot yield him a "reasonable return” if used only for a permitted use. That is a showing which must be made by an applicant for a use variance. (See Matter of Moore v Nowakowski, 44 AD2d 901.)
Respondents’ determination is confirmed and the petition is dismissed.