DECISION
Before this Court is an appeal from a decision of the Zoning Board of Review of the Town of Portsmouth ("Board"), which granted James Seveney and Valerie Seveney ("Applicants") three dimensional variances. Lynn Thurston and Pamela Rohdenburg ("Appellants or Plaintiffs") seek reversal of the Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 FACTS AND TRAVEL
The lot in question is located at 72 Macomber Lane in Portsmouth, Rhode Island and is known as Tax Assessor's Map 34, Lot 77. (Dec. on the Pet. of James and Valerie Seveney at 1.) The property is located in an R-20 Residence District, which requires 20,000 square feet minimum lot size for single-family dwellings. (Zoning Ordinance of the Town of Portsmouth, Article III, § B.) The subject lot, consisting of 8,394 square feet, is non-conforming. (Dec. at 1.) The property is currently used as a single-family residence, with 1100 square feet of living area. (Pet. for Variance.) *Page 2 
Mr. Seveney and his brothers inherited the property from their mother and Mr. Seveney arranged to buy out his brothers' interests in the property. (Dec. at 2.) In June 2007, Applicants sought dimensional variances to allow construction of an addition to the existing residential dwelling located on the property. (Dec. at 1.) Specifically, Applicants requested a nine-tenths of one foot (0.9') dimensional variance to the side yard setback provision of the Portsmouth Zoning Ordinance ("Ordinance") on the south side, a twelve and three-quarters foot (12.75') dimensional variance to the side yard setback provision of the Ordinance on the north side, and a ten and one-half foot (10.5') dimensional variance to the building separation provisions of the Ordinance between the main residence and a separate structure located on the property. (Dec. at 1.)
The Board held properly noticed public hearings on the Applicants' petition on June 21, June 28, October 18, and December 20, 2007, as well as February 28, 2008. Id. The Board heard the testimony of James Seveney and Joseph Ferreira, Applicants' Contractor from Sakonnet Design Builders, in support of the petition. Id. The Board also considered letters of support from two neighbors.Id.
Mr. Seveney testified that because the house encroached marginally into the setbacks required under the Ordinance he needed zoning relief for virtually any renovation. (Dec. at 2.) Mr. Seveney testified that his children had recently left home and he and his wife were seeking to downsize to a smaller home. Id. He had sold his present home and purchased the property at issue from his brothers with the intention of making it his permanent residence.Id. Mr. Seveney testified that it was his desire to increase the roof pitch on the two-story portion of the house and increase the height of the sidewall on the one-story portion of the house.Id. Additionally, Mr. Seveney sought permission to *Page 3 
extend the house out over the existing porch ten (10') feet to the west where he had no property line encroachment issues as defined under the Ordinance. Id. However, this addition would bring the primary structure to within nine and one-half feet (9.5') of the existing outbuilding located at the property which would require a ten and one-half foot (10.5') dimensional variance under the Ordinance. Id. Mr. Seveney further stated that proposed house would comply with all height and lot coverage requirements and would not encroach further into the setbacks than the existing house. Id. Mr. Ferreira concurred with Mr. Seveney's testimony and further stated that he could accomplish all of the above mentioned renovations without disturbing any neighboring properties, but only if zoning relief was granted. (Dec. at 3.)
In addition to the testimony that the Board received in support of the petition, the Board also heard the testimony of Lynne Thurston, Michael Corey, and Phillip Wayland all in opposition to the petition. Ms. Thurston testified that she and her brother Mark Thurston, as well as their sister Pam Rohdenburg, owned the property abutting the Seveney property to the north. (Dec. at 2.) Through her attorney, Ms. Thurston alleged that the property contained both a single-family dwelling unit as well as an accessory family dwelling unit and therefore a special use permit as defined by the Ordinance would be required to alter the property. Id. Ms. Thurston went on to testify that the property she co-owned with her siblings was one of the last summer homes in the neighborhood and renovations such as the one proposed were changing the character of the neighborhood. She also expressed concerns that any renovations of the dwelling would require the builders to trespass on her property. Id. Mr. Corey, a resident at Ms. *Page 4 
Thurston's property, expressed similar sentiment to the Board, that the proposed house would change the character of the neighborhood. Id.
At the conclusion of the hearing, the Board approved the proposed dimensional variances by a vote of 4-1. (Dec. at 4.) In March 2008, the Board issued a written decision formally granting the Applicants' petition. Id. The Board's written decision was recorded on March 11, 2008. Appellant thereafter filed a timely appeal to this Court.
 STANDARD OF REVIEW
This Court's review of a zoning board's decision is governed by § 45-24-69(d), which provides:
 "The Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *Page 5 
When reviewing a zoning board decision, a justice of the Superior Court may not "substitute [his or her] judgment for that of the zoning board if [he or she] conscientiously find[s] that the board's decision was supported by substantial evidence." Apostolou v.Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Reviewof North Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981)). Conclusional or insufficient evidence warrants the reversal of a zoning board's decision.Hopf v. Bd. of Review of City of Newport,120 R.I. 275, 288-89, 230 A.2d 420, 428-29 (1967).
 RELIEF SOUGHT
The Plaintiffs argue that this Court should reverse the Board's decision because it contains errors of law. The Plaintiffs aver that the Applicants, in requesting dimensional variances, did not request the proper relief from the Board. First, Plaintiffs claim that the Applicants were required to seek a special use permit for the maintenance of two dwelling units on the property. Specifically, Plaintiffs characterize the so-called outbuilding as a separate dwelling unit under the Ordinance, thereby making the entire lot nonconforming by use and requiring the Plaintiffs to seek a special use permit for two dwelling units. However, in making this argument the Plaintiffs fail to consider that the outbuilding pre-dates the current zoning regulations making it a legal pre-existing nonconforming use under the Ordinance and the Zoning Enabling Act. (Ordinance Article II.) Even if the outbuilding was a separate dwelling unit, as defined in the *Page 6 
Ordinance, the Applicants have not proposed to alter the outbuilding in any way and therefore do not require a special use permit as defined in Article VI, § C of the Ordinance.
Second, the Plaintiffs argue that the Applicants were required to obtain a special use permit because the outbuilding is between the principal structure and the street right-of-way, something that is prohibited by Article II, § B of the Ordinance. The evidence in the record before the Board however, shows that: (1) the applicants did not propose to alter the outbuilding and (2) the outbuilding pre-dates current zoning regulations. Therefore, the Board's decision not to require the Applicants to seek a special use permit for relief under the Ordinance was supported by substantial evidence in the record.
As a result, the Applicants were correct to seek dimensional variances and a special use permit was not needed.
 DIMENSIONAL VARIANCES
The legal standards that a zoning board is required to apply when deciding to issue a dimensional variance are set forth in § 45-24-41(c) of the State Zoning Enabling Act and Article VI, § D of the Portsmouth Zoning Ordinance:
 "In granting a variance, the zoning board of review shall require that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant;
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain; *Page 7 
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary."
In addition to the above requirements, § 45-24-41(d)(2) provides that zoning boards of review must require entry of evidence into the record of the proceedings establishing that "the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience."
Under the Ordinance, in appealing for dimensional variances to build a new or enlarge an existing structure on a substandard lot, in addition to the requirements for variances in Article VI, § D, the Zoning Board of Review shall also consider whether such variance:
 (1) Would allow adequate space for fire protection;
 (2) Provide adequate light and air between buildings;
 (3) Would alter the character of the neighborhood, or adversely affect neighboring property;
 (4) Would create lot coverage and setbacks less than the average lot coverage and setbacks of adjacent properties;
 (5) Would impose a substantial detriment to the public or to immediate neighbors.
The Rhode Island Supreme Court has long held that "a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review." Bernuth v. Zoning Bd. ofReview of the Town of New Shoreham, 770 A.2d 396, 401 (R.I. 2001) (citing *Page 8 Cranston Print Works Co. v. City of Cranston,684 A.2d 689, 691 (R.I. 1996)). Proper findings of fact and conclusions of law must expressly address the evidence in the record that speaks to each criterion enumerated in § 45-24-41(c) and (d) pursuant to the directive of the Court in Sciacca v. Caruso:
 "We take this opportunity . . . to caution zoning boards and their attorneys to make certain that zoning board decisions on variance applications (whether use or dimensional) address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d). Such a specification of evidence in the decision will greatly aid the Superior Courts, and, if necessary, this Court, in undertaking any requested review of these decisions." Sciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2001).
 DECISION OF THE ZONING BOARD
In the instant case, after briefly noting the subject lot's existing non-conformities, the Applicants' proposed renovations and the testimony of the Plaintiffs, the Board's written decision sets forth the following conclusions:
 "The Board noted that the proposed structure conformed with lot coverage and height requirements of the ordinance. The Board found that the proposal allowed adequate space for fire protection, provided adequate light and air between buildings and did not increase lot coverage or create new building setback distances. The Board determined the proposal would not alter the character of the neighborhood, adversely effect neighboring property or impose a detriment to public heath or neighbors. The Board concluded that the relief requested was the minimum relief necessary and that the hardship that necessitated the request for relief was not the result of prior action of petitioners but was due to the unique characteristics of the land and the structures in question. The Board determined that granting the requested relief would not alter the general character of the surrounding area or impair the purpose or intent of the Zoning Ordinance or the Comprehensive Community Plan *Page 9 
and that denial of the relief requested would result in more than a mere inconvenience to petitioners."
Upon review of these conclusions, this Court finds that the decision fails to properly explain how the evidence in the record supports the conclusions reached by the Board.
In Coderre v. Zoning Bd. of Review of the City ofPawtucket, the Rhode Island Supreme Court described the deficiencies of an invalid board decision in the following manner:
 "[The decision] is conclusional, but not factual; it recites supposed legal principles as justification for what it permits, but does not set out the supporting grounds without which there can be no justification; it utters what purport to be the preconditions to a grant of a variation, but it does not fortify them with the prerequisite findings." Coderre, 102 R.I. 327, 331, 230 A.2d 247, 249 (1967).
The Coderre Court's comments are equally applicable to the instant case. Nothing in the Board's written decision informs this Court of the grounds upon which the Board concluded that each requirement of § 45-24-41(c) had been fulfilled. The closing passages of the Board's decision leave the impression that the Board placed some weight on the fact that the Applicants made an effort to address the concerns of their neighbors before proceeding with their plans. Evidence of such an effort fails to amount to an adequate substitute for the factual findings necessary to satisfy the requirements of § 45-24-41(c).
Moreover, the Board's decision makes no effort to address the additional mandate of § 45-24-41(d)(2), requiring entry of evidence into the record establishing that "the hardship suffered by the owner of the subject property if the dimensional variance is not *Page 10 
granted amounts to more than a mere inconvenience." The record establishes that considerable testimony on this issue was adduced over multiple dates in front of the Board. However, when a zoning board fails to state sufficient findings of fact, "the court will not search the record for supporting evidence or decide for itself what is proper in the circumstances." Irish Partnership v.Rommel, 518 A.2d 356, 359 (R.I. 1986) (citing Hooper v.Goldstein, 104 R.I. 32, 44, 241 A.2d 809, 815 (1968)).
Accordingly, this Court finds that the Board's written decision failed to make findings of fact and conclusions of law sufficient to fulfill the requirements set forth in § 45-24-41(c) and (d) of the State's Zoning Enabling Act and Article VI of the Portsmouth Zoning Ordinance. Consequently, this matter is remanded to the Board for the preparation of a decision addressing whether the evidence in the record establishes that the Applicants have satisfied all of the preconditions that accompany issuance of a valid dimensional variance.
 CONCLUSION
In granting the Seveneys' petition for dimensional variance, the Board failed to make sufficient findings of fact. For the foregoing reasons, this case is remanded to the Board for the preparation of a decision containing further findings of fact and conclusions of law. Jurisdiction shall be retained by this Court.